IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UMIA INSURANCE, INC., | CV 20-177-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| ENRICO F. ARGUELLES, ARTHRITIS & OSTEOPOROSIS CENTER PC, DONNA FRYER, BROOKLYN T. BLACK, BARBARA DAVISON, LORA SMITH, JULIE LORTZ and STEVE LORTZ, | |
| Defendants. | |

Plaintiff UMIA Insurance, Inc. ("UMIA") filed this action against

Defendants Enrico F. Arguelles, M.D. ("Arguelles"), and Arthritis & Osteoporosis

Center PC ("AOC") ("Insureds"), and against Donna Fryer, Brooklyn T. Black,

Barbara Davison, Lora Smith, and Julie and Steve Lortz ("Underlying Claimants"),

seeking a declaration as to its duty to defend and indemnify Arguelles and AOC in

relation to claims brought by the Underlying Claimants, as well as its duty to

defend certain subpoenas and requests for information served on Arguelles and

AOC. (Doc. 1.)

Arguelles and AOC filed an Amended Answer and Counterclaim against

UMIA seeking declaratory relief, and also asserting claims of breach of contract,

abuse of process, and bad faith.  (Doc. 20.)  Arguelles and AOC have also filed a

Motion to Certify Question to the Montana Supreme Court (Doc. 42).

Presently before the Court are UMIA's Motion for Partial Summary

Judgment as to Arguelles and AOC's counterclaims (Doc. 29), Arguelles and

AOC's Motion to Certify Question to the Montana Supreme Court (Doc. 42), and

Arguelles and AOC's Motion for Partial Summary Judgment Re Duty to Defend

(Doc. 44).  The motions are fully briefed and ripe for review.

Having considered the parties' submissions, the Court finds that UMIA's

motion (Doc. 29) should be GRANTED in part and DENIED in part; Arguelles

and AOC's motion to certify (Doc. 42) should be DENIED; and Arguelles and

AOC's motion re duty to defend (Doc. 44) should be DENIED.

## I.    Factual Background[1]

Arguelles was the president and director of the Arthritis & Osteoporosis

Center in Billings, Montana.  At AOC, Arguelles provided treatment to patients

with autoimmune and joint diseases, including rheumatoid arthritis.  Between 2013

and 2017, Defendants Fryer, Black, Smith, Davison, and Lortz were patients of Dr.

Arguelles.  Subsequently, these patients each filed lawsuits against Arguelles and

AOC, alleging claims for medical malpractice and fraud for engaging in a pattern

---

[1] The background facts set forth here are relevant to the Court's determination of
the pending motions for summary judgment and are taken from the parties'
submissions and are undisputed except where indicated.

of improperly diagnosing rheumatoid arthritis, and for providing unnecessary medical treatment to increase profits (the "Underlying Lawsuits" or "Underlying Claims").   Arguelles and AOC deny committing any fraudulent acts or intentional violations of law.

At all times relevant to the Underlying Lawsuits, UMIA insured Arguelles and AOC under two separate policies.   The Underlying Claims were tendered to UMIA, and UMIA took the position that the claims of fraud implicated several exclusions in the policy.   Nevertheless, UMIA agreed to defend pursuant to a reservation of rights.

Later, Arguelles and AOC also tendered to UMIA several subpoenas and requests for information issued by the United States Department of Justice and Department of Health and Human Services, respectively.[2]  UMIA rejected the tender of defense.[3]  Arguelles and AOC maintain that there is potential coverage in

---

[2] *See* Doc. 56-1.  The requests for information issued by the Department of Health and Human Services were not submitted for the record by either party.

[3] It is undisputed that UMIA rejected Dr. Arguelles' tender of defense regarding the subpoenas and information requests.  (*See* Docs. 1 at ¶ 80; 31 at 10; 39 at 11-12).  In briefing, UMIA contends these requests were part of a criminal investigation and argues determination of the duty to defend is premature because Dr. Arguelles and AOC have failed to provide UMIA with "additional information . . . to allow a full evaluation of the significant coverage questions."  (Doc. 50 at 7.) Dr. Arguelles and AOC argue UMIA filed the present suit before they had an opportunity to respond to UMIA's tender rejection and dispute that any criminal charges have been brought against them.  (Doc. 56 at 9 n. 2.)

responding to these matters under the policy's "Cyber Solutions®/Medefense®

Plus Endorsement,"[4] and thus, UMIA has a duty to defend.  UMIA disputes that

this section provides coverage.

On December 7, 2020, UMIA filed this action seeking a declaration that it

has no continuing duty to defend or indemnify Arguelles and AOC for the claims

asserted in the Underlying Lawsuits or in connection with the subpoenas and

requests for information.

Arguelles and AOC filed an Amended Answer and Counterclaims against

UMIA for breach of contract (Counterclaim One), violation of the Unfair Trade

Practices Act and the implied covenant of good faith and fair dealing

(Counterclaim Two), declaratory relief establishing that the Underlying Claims are

covered under the policies and that UMIA has a duty to settle (Counterclaim

Three), and abuse of process (Counterclaim Four).  (*See* Doc. 20.)  UMIA moves

for partial summary judgment as to all of Arguelles and AOC's counterclaims

except declaration of coverage as to the Underlying Lawsuits.  (Doc. 29.)

Arguelles and AOC have also now moved to certify to the Montana

Supreme Court the following question:

> Whether a liability insurer is immune from suit for breaches of its
> contractual and statutory duties to settle and act in good faith due to the mere
> existence of a pending declaratory relief action.

---

[4] *See* Doc. 1-10 at 10, 13.

(Doc. 42.)  In addition, Arguelles and AOC have moved for partial summary judgment, seeking a declaration that UMIA has a duty to defend the Underlying Lawsuits, subpoenas, and requests for information.  (*See* Docs. 44-45.)

Since the filing of this action, Defendants Fryer, Black, Smith, Davison, and Lortz have been dismissed pursuant to settlements of all the Underlying Lawsuits.[5]

## II.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to

---

[5] *See* Docs. 13-14 (Unopposed Motion to Dismiss Lortz); 25-26 (Stipulation to Dismiss Fryer and Davison); 52, 52-1 (acknowledging settlement of the Black lawsuit); 60-61 (Stipulation to Dismiss Smith).

the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and . . . by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

/ / /

6

## III.   Discussion

### A.   Dr. Arguelles and AOC's Counterclaims

#### 1.   Counterclaim One – Breach of Contract

Arguelles and AOC allege UMIA breached its duties under the policies for "failure to accept indemnity coverage, reserving rights in connection with its provision of a defense, and refusing to accept a reasonable settlement offer within limits." (Doc. 20 at ¶ 35.)  UMIA moves for summary judgment on Arguelles and AOC's breach of contract claims.  In doing so, however, UMIA does not advance any argument as to whether there is, in fact, coverage under the policy.  Instead, the sole basis for asserting entitlement to summary judgment is that UMIA followed the Montana Supreme Court's recommended procedure when a defense is tendered on a claim with disputed coverage.  That is, accepting the tender of defense under a reservation of rights and filing a declaratory judgment action as to coverage under the policy.

The Court's jurisdiction over this action is based on diversity of citizenship.  Thus, the Court must apply the substantive law of Montana.  *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).  UMIA acknowledges that an insurer in these circumstances potentially has at least three separate and independent duties under Montana law: (1) a duty to defend; (2)

a duty to indemnify; and (3) in some circumstances, a duty to settle within policy limits.  (Doc. 49 at 5.)

With respect to the first duty, it is well-settled in Montana that an insurer's duty to defend is independent from and broader than its duty to indemnify. *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004).  "The duty to defend arises when a complaint against an insured alleges facts which, if proved, would result in coverage." *Tidyman's Mgmt. Services Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) (citing *Staples*, 90 P.3d at 385 (Mont. 2004)); *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 410-11 (Mont. 2013).  Likewise, a duty to defend exists where a complaint alleges facts that fall outside of the policy, but also contains facts which, if proved, would result in coverage.  *Staples*, 90 P.3d at 385.

The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, requires coverage exclusions to be narrowly construed.  *Id.*  Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id.*  If the insurer believes a policy exclusion applies, it should defend under a reservation of rights and seek determination of coverage through a declaratory judgment action. *Tidyman's*, 330 P.3d at 1151.  Accordingly, the insurer has a duty to defend unless there is an "unequivocal demonstration that the claim against an insured does not fall within

8

the insurance policy's coverage." *Staples*, 90 P.3d at 385.  When an insurer unjustifiably refuses to defend, it is estopped from denying coverage and is liable for defense costs and any judgment against the insured.  *Tidyman's*, 330 P.3d at 1149.

The duty to indemnify, on the other hand, "arises only if coverage under the policy is actually established." *Freyer*, 312 P.3d at 410-11.  "[I]n a declaratory judgment action, if there remain unresolved related issues in the underlying action that may ultimately affect whether an insurer has a duty to indemnify, issuing a ruling on indemnity obligations is premature." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 363 (Mont. 2005).  An insurer breaches the duty to indemnify if it fails to provide coverage when "(1) the established facts trigger coverage under the terms of the policy, and (2) the extent of the claimant's damages are undisputed or clearly exceed policy limits." *Freyer*, 312 P.3d at 411.

Here, it is undisputed that the Underlying Lawsuits alleged facts which, if proved, may result in coverage.  Accordingly, UMIA accepted the tendered defense subject to a reservation of rights, and filed the instant declaratory judgment action.  UMIA now argues that because this was "the prudent process to follow," it cannot be liable for any breach of contract.

UMIA was correct to defend under a reservation of rights due to the potential for coverage, and in doing so, UMIA avoided potential liability for

9

defense costs and judgments if it was found to have unjustifiably refused to defend the Underlying Lawsuits.  But the Montana Supreme Court has never suggested that accepting a defense under a reservation of rights and filing a declaratory judgment action immunizes an insurer from suit for the breach of other duties that may arise.  If that were the case, an insurer could wrongfully deny indemnity in a case where coverage was clear, or fail to settle a claim in circumstances where it has a duty to do so, and leave the insured without recourse as long as it has agreed to defend under a reservation of rights and filed a declaratory judgment action. The Montana Supreme Court has prescribed this as a proper course to determine whether there is a duty to defend in cases where coverage is disputed.  There is no indication, however, that the Montana Court intended to provide insurers a safe harbor, and leave insureds without recourse for an insurer's breach of other duties under an insurance contract.

That is not to suggest that is what occurred here.  But UMIA has not provided any facts from which the Court could determine whether UMIA breached its duty to indemnify or settle.  It has, thus, failed to establish the absence of any genuine issue of material fact as to its duty to indemnify, and summary judgment on Arguelles and AOC's breach of contract claim is not appropriate.

/ / /

/ / /

10

2.     **Counterclaims Two and Three – Violation of the Unfair Trade Practices Act and the Implied Covenant of Good Faith and Fair Dealing**

Arguelles and AOC's second counterclaim alleges UMIA has engaged in conduct that violates the Unfair Trade Practices Act and the implied covenant of good faith and fair dealing.  (Doc. 20 at ¶¶ 38-48.)  In the third counterclaim, Arguelles and AOC seek a declaration that UMIA "has a duty to effectuate global settlement . . . on the terms recommended by Judge Moses."[6]  UMIA argues that these counterclaims fail because it had a reasonable basis to deny coverage and no duty to settle due to a potential coverage exclusion.  Dr. Arguelles and AOC argue UMIA has not established a reasonable basis defense.

Montana's Unfair Trade Practices Act ("UTPA") regulates an insurer's relations with an insured and prohibits certain claim settlement practices.  Mont. Code Ann. § 33-18-201 (2021).  The UTPA further provides for, and limits, the causes of action an insured may bring against an insurer for damages in connection with the handling of an insurance claim.  Mont. Code Ann. § 33-18-242.  But an insurer may not be liable under § 33-18-242 "if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is at issue."  Mont. Code Ann. § 33-18-242(5).  Arguelles and AOC's complaint does

---

[6] Counterclaim Three also seeks a declaration that UMIA's policies provide coverage for the Underlying Lawsuits, but UMIA does not seek summary judgment as to that issue.  (*See* Doc. 29 at 2.)

not specify sections of the UTPA but alleges violations for UMIA's: (1) failure to provide a coverage position under all available positions under the policies; (2) use of protected settlement information in attempts to deny coverage; and (3) failure to effectuate settlement within policy limits.  (Doc. 20 at ¶¶ 39, 41, 43.)

In addition, implicit in an insurance policy is the "duty of 'good faith' consideration of settlement offers."  *Freyer*, 312 P.3d at 418 (citing *Jessen v. O'Daniel*, 210 F. Supp. 317 (D. Mont. Nov. 6, 1962)).  Whether an insurer acted in good faith is determined on a case-by-case basis.  *Id.*  An insurer who in bad faith fails to settle a third-party claim against its insured risks a judgment that exceeds coverage limits.  *Id.*

UMIA argues that it cannot be liable in bad faith or under the UTPA because it had a reasonable basis for contesting coverage.  In *Dean v. Austin Mut. Ins. Co.*, 869 P.2d 256, 258 (Mont. 1994), the Montana Supreme Court held, as a general rule, the issue of whether an insurer has a reasonable basis in law or fact for contesting a claim is a question for the trier of fact because "reasonableness is generally a question of fact."

The Montana Supreme Court clarified in *Redies v. Attorneys Liab. Prot. Soc'y*, 150 P.3d 930, 938 (Mont. 2007), however, that "reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under

those precedents." It is the insurer's burden to establish by a preponderance of the evidence its reasonable basis defense. *Redies*, 150 P.3d at 937. If an insurer shows a reasonable basis for contesting coverage, it cannot be said to have acted in bad faith. *Freyer*, 312 P.3d at 418.

In *Freyer*, the insurer contested coverage based on its interpretation of the "Each Person" limit in the policy. 312 P.3d at 419. In determining the reasonableness of this defense, the Montana Supreme Court examined the "legal landscape" addressing this issue. *Id.* Based on Montana precedent, and that of numerous other jurisdictions, the Court ultimately determined that while the insurer's interpretation was incorrect, it was not unreasonable. *Id.* at 421. The Court, thus, affirmed the district court's grant of summary judgment to the insurer on common-law bad faith, breach of the covenant of good faith and fair dealing, and UTPA claims. *Id.* at 417, 421, 423.

The Court cautioned, however, that "[f]actual disputes affecting coverage are certainly decided by the trier of fact, and [the *Freyer*] opinion does not change that." *Id.* at 422. Thus, while a court may resolve an insurer's reasonable basis in law defense, underlying factual disputes must still be resolved by the trier of fact. *See Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 899, 902-03 (Mont. 1993) (holding whether the insurer had a reasonable basis to deny an underlying claim was a question of fact where there were disputed facts as to how the

insured's accident occurred, and thus, whether there was coverage under the policy); *Kephart v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa.*, 2008 WL 11347415, at *5-6 (D. Mont. Feb. 5, 2008) (denying summary judgment and holding whether the insurer had a reasonable basis for contesting the claim was a jury question where there were disputed facts as to whether the insurer acted in good faith).

Here, UMIA asserts that Arguelles and AOC's counterclaims under the UTPA and for failure to settle must fail because it "had a reasonable basis for contesting coverage" and liability was not "reasonably clear." (Doc. 30 at 11-12.) But UMIA provides no further argument as to its reasonable basis defense, nor does it provide any factual support for its motion. Presumably, UMIA's "reasonable basis for contesting coverage" refers to the potential exclusions under the policies. UMIA acknowledges, however, that some of the Underlying Claims, if proved, would be covered under the policies, while others may be excluded.[7] But there have been no facts presented outside of the pleadings to show the absence of any genuine issue of material fact as to whether the Underlying Claims constituted covered claims for medical negligence and/or excluded claims for fraud. Outside of the pleadings, UMIA has also not established the absence of any

---

[7] "[Dr. Arguelles and AOC's] former patients made mixed claims of medical negligence and fraud/violation of law – the latter potentially excluded under the UMIA policies issued to Dr. Arguelles." (Doc. 30 at 2.)

genuine issue of fact as to whether UMIA acted in good faith in refusing settlement or violated the UTPA under the established facts and circumstances.   Accordingly, summary judgment as to Counterclaims Two and Three must be denied.

### 3.   Counterclaim Four – Abuse of Process

In Counterclaim Four, Arguelles and AOC assert a claim of abuse of process.  They allege that in filing this declaratory action, UMIA acted with the ulterior purpose to pressure and leverage the Insureds "to effectuate a within-limits settlement of covered claims."  (Doc. 20 at ¶¶ 58-59.)  UMIA argues that filing a declaratory judgment action cannot constitute an abuse of process because it had no ulterior motive in seeking a determination as to coverage, and Montana law requires this course of action where an insurer contests coverage.

Under Montana law, a plaintiff alleging abuse of process must prove: (1) "a willful use of process not proper in the regular conduct of the proceeding"; and (2) "that the process was used for an ulterior purpose." *Spoja v. White*, 317 P.3d 153, 157 (Mont. 2014).  The legal process itself does not have to be unlawful to support an abuse of process claim.  Rather, "[t]he legal process must be 'put to a use perverted beyond its intended purpose.'" *Salminen v. Morrison & Frampton, PLLP*, 339 P.3d 602, 610 (Mont. 2014) (citing *Brault v. Smith*, 679 P.2d 236, 240 (1984)).  The Montana Supreme Court has explained that "[a]n abuse of process may occur when a party uses process to coerce another to 'do some collateral thing

[that he] could not be legally and regularly compelled to do.'" *Id.* (citing *Judd v. Burlington N.*, 186 P.3d 214, 217 (Mont. 2008)).

Unlike Counterclaims One through Three, Arguelles and AOC's claim for abuse of process focuses solely on the filing of this declaratory judgment action. It is alleged that this action was used to coerce them into doing something they would not regularly be compelled to do. They allege it was used "as a means of leveraging its insureds to contribute their own assets to effectuate a within-limits settlement of covered claims." (Doc. 20 at ¶ 59.)

In its statement of undisputed facts, UMIA has established the absence of any issue of material fact relative to the filing of this action. UMIA has established that the Underlying Claims asserted claims for fraud and violation of federal laws and regulations. (Doc. 39 ¶¶ 5-10.) UMIA has also established that the policies at issue contained exclusions which may be implicated because of the allegations of fraud and unlawful conduct. (*Id.* at ¶¶ 15, 19.) It is also undisputed that Arguelles and AOC tendered the defense of the lawsuits to UMIA, and that UMIA raised the coverage issues under those exclusions. But UMIA agreed to defend Arguelles and AOC under a reservation of rights. (*Id.* at ¶ 11).

UMIA has also established that Arguelles "tendered several subpoenas and requests for information in criminal and related (sic) inquiries" for defense and indemnification. (*Id.* at ¶ 20.) UMIA rejected Arguelles' tender of defense. (*Id.*)

UMIA then filed this declaratory judgment action seeking a declaration as to its defense and indemnity obligations to Arguelles and AOC relative to the Underlying Lawsuits, subpoenas, and requests for information.  As discussed above, this is the proper course of action prescribed by the Montana Supreme Court, and absent other facts or circumstances, is not an abuse of process.

In their response to the motion for summary judgment, Arguelles and AOC advance several allegations of wrongful conduct by UMIA in the course of the mediation and settlement of the Underlying Claims.  They allege, for example, that UMIA did not participate in good faith in mediating the claims (Doc. 38 at ¶¶ 8, 9, 10, 24, 25, 26, 27, 28); improperly relied on protected communications (*Id.* at ¶ 12); asserted coverage positions different from those set forth in its reservation of rights (*Id.* at ¶ 13); adopted the Underlying Claimants' factual allegations in support of their coverage position (*Id.* at ¶¶ 17, 18, 20, 32); directed AOC and Arguelles not to discuss settlement of covered claims with the Underlying Claimants (*Id.* at ¶¶ 29, 30, 31); and generally allege that coverage exists under the policy and UMIA's failure to settle the Underlying Claims.

While these allegations may be relevant to Arguelles and AOC's breach of contract, bad faith, and violation of the UTPA claims, it is not apparent how they are material to the filing of this declaratory judgment action.  Arguelles and AOC have raised no genuine issues of material fact that the filing of this action was not

proper, that the process has been perverted beyond its intended purpose, or that it was used for an ulterior motive.  There is a coverage dispute, at least with respect to a portion of the Underlying Claims, and this declaratory judgment action is the proper course to resolve that dispute.  Further, contrary to the allegations in their pleadings, Arguelles and AOC have not presented any material facts to show that the filing of this action compelled them to do anything they could not legally or regularly be required to do.  Summary judgment on Arguelles and AOC's abuse of process claim is, therefore, proper.

## B.    Duty to Defend

### 1.    Underlying Lawsuits

Arguelles and AOC move for partial summary judgment seeking a declaration that UMIA has a duty to defend the Underlying Lawsuits.  UMIA acknowledges its duty to defend against the Underlying Lawsuits based on the existence of claims that may be covered under the policies.  It is, therefore, undisputed that UMIA had a duty to defend and continued to do so after this action was filed.  In response to the motion for partial summary judgment, however, UMIA argued this duty "could be extinguished in light of the insurance coverage questions."  (Doc. 50 at 2.)  But when UMIA filed its response to the Insureds' motion, all but one of the Underlying Lawsuits had settled.  (*Id.* at 3.)  Since then, all the Underlying Lawsuits have been settled.   Accordingly, there is no dispute

that UMIA had a duty to defend the Underlying Lawsuits; that UMIA did provide a defense; and that all of the Underlying Lawsuits have now been settled and dismissed.  Moreover, UMIA's reservation of rights did not include a reservation of the right to recoup defense costs, and UMIA is not seeking reimbursement of those costs.  (Doc. 51 at ¶ 7.)  Therefore, there are no existing claims to defend, and no further issues have been identified relative to UMIA's duty to defend the Underlying Lawsuits.  (*See* Doc. 63.)  The issue of UMIA's duty to defend the Underlying Lawsuits is moot, and Arguelles and AOC's motion for summary judgment on the issue will be denied on that basis.

### 2.    Subpoenas and Requests for Information

Arguelles and AOC also seek a declaration that UMIA had a duty to defend the subpoenas and requests for information.  UMIA rejected their tender of defense of these matters on the basis that coverage was precluded under Arguelles and AOC's 2018 liability policies.   (Docs. 1 at ¶ 80; 39 at ¶ 20.)  UMIA asserts that the subpoenas and requests for information "were served as a part of a criminal investigation," and are thus excluded from coverage under the policies.  (Doc. 50 at 4.)  UMIA also argues that it is "premature" to determine whether it has a duty to defend the subpoenas and requests for information, because Arguelles and AOC failed to provide UMIA "the additional information necessary to evaluate such tender." (Doc. 50 at 8.)

Arguelles and AOC dispute that any criminal charges have been pursued against them.  They also maintain that UMIA had a duty to defend the subpoenas and requests for information under the "Cyber Solutions®/Medefense® Plus Endorsement" ("Endorsement") in their policy with UMIA.  They argue that the subpoenas and requests for information "are potentially covered under this provision," and "[n]o exclusion unequivocally precludes this coverage . . . ."  (Doc. 56 at 8.)  Thus, according to Arguelles and AOC, "as long as even one potentially covered claim remains pending, UMIA must defend the entirely of the subject actions. . . ."  (*Id.*)

Section One of the Endorsement sets forth several "Coverage Agreements." Subsection K provides the coverage at issue, and provides:

> <u>Medefense Plus Regulatory Proceedings Coverage</u>: Subject to the limits set forth in the Schedule, we agree to reimburse an **insured** for **defense costs** and **shadow audit expenses** the **insured** incurs, and **regulatory fines and penalties** (to the extent insurable by law) imposed against the **insured**, because of a **claim** for **wrongful acts**, including a **claim** resulting from **voluntary self-disclosure**, provided that:
>
> 1.    Such **claim** is first made against the **insured** during the **endorsement period**; and
> 2.    Such **claim** is reported to us during the **endorsement period**.
>
> We have no duty to defend under the Medefense Plus Regulatory Proceedings Coverage Agreement, but only to reimburse covered **defense costs, shadow audit expenses**, and **regulatory fines and penalties** incurred by the **insured**.  The **insured** will have complete freedom of choice with respect to the selection of the licensed attorney who provides legal services in connection with any **claim** covered under the Coverage Agreement.

Attorney rates will be capped at a maximum of $300 per hour.  All counsel must comply with our reasonable defense counsel guidelines.

(Doc. 39-25 at 4.) [8]

Section Two of the Endorsement, titled "Defense, Investigation, and Settlement," further provides in relevant part:

No **insured** will incur any **defense costs** or other expenses, or settle any **claim**, assume any contractual obligation, admit liability, voluntarily make any payment, or otherwise consent to any settlement or judgment with respect to any **claim** without our prior written consent, which will not be unreasonably withheld.  We will not be liable for **defense costs** or other expenses, or settlement or judgment to which we have not consented.

(*Id.*)

Therefore, under the plain language of the Endorsement, UMIA has no duty to defend; it only has the duty to reimburse an insured for covered defense costs. Citing *Tidyman's*, however, Arguelles and AOC argue that the duty to pay defense costs is "functionally equivalent" to the duty to defend.  (Doc. 56 at 11.)  But this contention is certainly not explicit in *Tidyman's* holding.  In addition, the policy provision at issue in *Tidyman's* was substantially different than the coverage provision in the endorsement here.  In *Tidyman's*, the policy provided:

---

[8] Under this section, a claim means "a regulatory proceeding commenced against an insured by letter, notice, complaint or order of investigation."  (Doc. 39-25 at 14.)  A regulatory proceeding is limited to a billing errors proceeding, an EMTALA proceeding, a Stark proceeding, or a HIPAA proceeding.  (*Id.* at 20.)  Last, a wrongful act means "a billing error; or an act, error or omission that gives rise to an EMTALA proceeding, Stark proceeding or HIPAA proceeding."  (*Id.* at 22.)

21

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer . . . .  This right [must be exercised within 30 days of the date the Claim is first made against an Insured, and the Insureds must not take any action, or fail to take any required action, that would prejudice the rights of the Insureds or the Insurer with respect to such Claim].  Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent . . . .

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim.  Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company . . . in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer . . . .  The Insurer's consent shall not be unreasonably withheld . . . .

330 P.3d at 160.

Therefore, unlike the Endorsement at issue here, the policy provision in *Tidyman's* provided that the insured had the right to tender the defense to the insurer, and the insurer was obligated to accept the tender and assume the defense of the claim.  Additionally, even when the insurer did not assume the defense, the insurer was required to "advance" defense costs upon the request by the insured "prior to final disposition of a Claim."  The Endorsement in the UMIA policy, on

22

the other hand, expressly states that UMIA had no duty to defend and was only required to "reimburse" defense costs "incurred."

The parties have cited no additional authority from the Montana Supreme Court where the Court has discussed the duty to defend based upon a policy provision to reimburse defense costs. But several federal cases in the Ninth Circuit have considered similar provisions. While those cases primarily consider the application of the duty to defend provisions under California law, California law is very similar to Montana law in this regard. Just as under Montana law, California law provides that the duty to defend is broader than the duty to indemnify; the insurer has a duty to defend if the underlying complaint asserts claims which are potentially covered under the policy; any doubt whether a duty to defend exists must be resolved in the insureds' favor; and if any claim in the underlying complaint is covered, the insurer has the duty to defend the entire action. *Manzarek v. St. Paul Fire and Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Cases considering the issue have had little difficulty determining that the duty to defend and the duty to pay defense costs are conceptually different. That is, a duty to pay defense costs is not tantamount to a duty to defend. *See, e.g.*, *Gon v. First State Ins. Co.*, 871 F.2d 863, 867 (9th Cir. 1989) (distinguishing a duty to defend and duty to pay legal costs). The more difficult question, however, is the

23

appropriate standard to apply in determining whether the insurer has the duty to pay defense costs. As noted above, Arguelles and AOC maintain that the same standard applies to both duties. Just as with the duty to defend, Arguelles and AOC argue that the duty to pay defense costs arises when there is a potential for coverage under the policy. (Doc. 56 at 8.)

There is a split of authority on this issue. There are cases which support Arguelles and AOC's position. In *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497 (9th Cir. 1993), for example, the Ninth Circuit considered a policy where the insurer had a duty to pay defense costs. There, the Ninth Circuit stated that the insured had the duty to show the complaint "*potentially* seeks damages within the coverage of the policy." *Olympic Club*, 991 F.2d at 503 (internal quotation and citation omitted) (emphasis in original). But the issue before the Court in *Olympic Club* concerned the scope of the basic coverage under the policy, not the standard required to trigger the duty to pay defense costs, and the Ninth Circuit did not discuss the issue. Since then, however, other district courts have considered the issue and applied the potential for coverage standard in duty to pay cases. In *Legacy Partners, Inc. v. Clarendon Am. Ins. Co.*, 2010 WL 1495198, at *4 (S.D. Cal. Apr. 14, 2010), the policy required the insurer to "pay defense costs arising out of 'civil proceeding[s] in which damages because of . . . Property Damage . . . to which this insurance applies are

24

alleged."  The court focused on the use of the word "alleged," and determined it was critical to its analysis.  The court pointed out that alleged damages are not actual or proven damages; they are assertions that "have the potential to become facts."  *Id.*  The court, therefore, reasoned that if the damages alleged in the underlying suit "are potentially covered by the Policy," then defense costs must be paid by the insurer.  *Id.*

The court reached a similar conclusion in *Braden Partners, LP v. Twin City Fire Ins. Co*., 2017 WL 63019, at *10 (N.D. Cal. Jan. 5, 2017).  There, the court recognized the split of authority on this issue, and said the determinative factor in each case is the specific policy language at issue.  In that case, the policy provided that the insurer was required to "advance . . . Claims Expenses which [the insureds] have incurred in connection with Claims made against [the insureds] prior to disposition of such claims."  *Id.*  The court found that, because it cannot be determined whether the suit falls within the indemnification coverage of the policy until the suit has been resolved, the policy provision contemplated potential, rather than actual, coverage.  *Id*.  Also, policy included coverage for wrongful acts, which were defined as "any actual or alleged error . . . ."  *Id.*  The court, therefore, concluded that, just as in *Legacy Partners*, the insurer was required to advance costs incurred in defending against "alleged" wrongdoing, "which suggests that potential coverage is sufficient to trigger the duty."  *Id*.

Conversely, other cases have held that the potential for coverage standard has no application in duty to pay defense costs cases.  In *Jeff Tracy, Inc. v. U.S. Specialty Ins. Co.*, 636 F. Supp. 2d 995, 1003 (C.D. Cal. May 5, 2009), the district court determined that the insured was required to demonstrate that the underlying claims are actually within the scope of coverage under the policy.  The policy in that case conspicuously disclaimed any duty to defend.  *Id.*  Additionally, the court found the language of the policy ran counter to the potential for coverage standard. Specifically, the policy provided that the insured was barred from admitting liability or stipulating to any judgment.  It also required that the insured provide its own defense, obtain the insurer's approval before incurring defense costs, and to allocate between covered and uncovered defense costs.  *Id*. at 1003-04.  The court found "[t]hese conditions are not consistent with the broader duty to defend standard," and held that the insured must establish that the underlying claims are within the scope of coverage, not potentially covered.  *Id*. at 1004.

The district court agreed with this analysis in *Millennium Labs. v. Allied World Assurance Co.*, 2013 WL 12072536 (S.D. Cal. July 22, 2013).  That case arose under circumstances similar to those here, where the insured was served with a "HIPAA subpoena" from the U.S. Department of Justice (DOJ).  *Id.* at *1.  The insured asserted that the subpoena was a claim under its insurance policy, and argued it was entitled to reimbursement by its insurer if the DOJ investigation was

potentially covered by the policy. *Id.* at *3. The district court disagreed, and determined that the potential for coverage standard did not apply. *Id.* at *4. The court found that the policy in question was not written on a duty to defend basis. *Id.* Rather, it was an indemnity policy, whereby the insurer agreed to reimburse the insured for defense costs only after the insured selected counsel, assumed control of the defense, and then submitted the defense bill for reimbursement. *Id.* Like *Jeff Tracy*, the policy also conspicuously disclaimed any duty to defend, and similarly contained provisions which were inconsistent with a duty to defend. *Id.* It required, for example, that the insured provide its own defense; obtain consent from the insurer for selection of defense counsel; obtain approval prior to incurring any defense costs or making any settlement offer or demand; as well as providing a procedure where the insurer could associate with the insured in defense of the claim or assume defense of the claim. *Id.*

Other cases have also joined *Jeff Tracy* and *Millennium Laboratories* in finding that the potential for coverage standard does not apply in duty to pay defense cost cases. *See, e.g.*, *United Farm Workers of Am. v. Hudson Ins. Co.*, 2019 WL 1517568, at *13 (E.D. Cal. Apr. 8, 2019) (declining to apply the potential for coverage standard, and requiring the insured to establish that the defense costs were within the scope of coverage under the policy); and *Petersen v. Columbia Cas. Co.*, 2012 WL 5316352, at *10 (C.D. Cal. Aug. 21, 2012) (same).

Turning to the specific policy language in this case, the defense cost provision in the UMIA policy is much more analogous to the *Jeff Tracy* line of cases. Unlike *Legacy Partners* and *Braden Partners*, the Endorsement does not cover alleged damages. It provides for payment of defense costs incurred and payment for regulatory fines and penalties imposed against the insured. The Endorsement also makes clear that UMIA only has the duty to "reimburse covered defense costs," not costs which may potentially be covered. Further, in contrast to the language in *Braden Partners*, the policy does not require UMIA to "advance" claims expenses "prior to the disposition of such claims." Instead, the policy provides for "reimbursement" of defense costs incurred and fines and penalties imposed.

Further, as in the *Jeff Tracy* line of cases, the Endorsement clearly declares that UMIA has no duty to defend. It also provides for many of the same conditions for coverage that *Jeff Tracy* found to be inconsistent with the potential for coverage standard. It provides the insured "complete freedom of choice" in selecting an attorney, subject only to a $300 per hour cap, and counsel's agreement to comply with UMIA's "reasonable defense counsel guidelines." The policy also provides that the insured cannot incur any defense costs, settle any claim, assume any contractual obligation, make any payment, or consent to any settlement or

28

judgment without UMIA's prior written consent, and makes clear that UMIA will not be liable for any defense costs for which it has not consented.

Therefore, far from agreeing to pay any defense costs which may potentially be covered, the Endorsement expressly provides that it will only reimburse covered defense costs incurred, which obligation is further conditioned on the policy's prior consent requirement.

Therefore, the potential for coverage standard does not apply to the UMIA policy.  Arguelles and AOC bear the burden of establishing that the defense costs incurred are actually within the coverage of the Endorsement.  Arguelles and AOC have not attempted to make this showing in their motion for summary judgment, and the motion will be denied, accordingly.

## C.    Motion to Certify Question

Rule 15(3) of the Montana Rules of Appellate Procedure provides that the Montana Supreme Court "may answer a question of law certified to it by a court of the United States . . . if: (a) [t]he answer may be determinative of an issue in pending litigation in the certifying court; and (b) [t]here is no controlling appellate decision, constitutional provision, or statute of this State."  M. R. App. P. 15(3).

Whether to certify a question to a state supreme court lies within the "sound discretion" of the district court.  *Butler v. N. Am. Capacity Ins. Co.*, 2013 WL 12133913, at *2 (D. Mont. Aug. 13, 2013) (quoting *Eckard Brandes, Inc. v. Riley*,

338 F.3d 1082, 1087 (9th Cir. 2003)).  Certification is not required even where state law is unclear.  *Id.*  Further, "mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit." *Lehman Bros. v. Schein*, 416 U.S. 386, 390 (1974).  A district court is not required to certify if it "believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so."  *Id.* at 395.

Here, Arguelles and AOC move to certify whether an "insurer is immune from suit for breaches of its contractual and statutory duties to settle and act in good faith" because it has filed a declaratory judgment action.  (Doc. 42.)  The Court has determined that Montana case law does not support UMIA's contention that filing a declaratory action bars an insured from alleging claims for breaches of contractual or statutory duties.  Because the Court has determined it can resolve this issue with Montana law already at hand, it declines to certify this question to the Montana Supreme Court.  Accordingly, Arguelles and AOC's motion to certify will be denied.

## IV.   Conclusion

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.     Plaintiff UMIA's Motion for Partial Summary Judgment (Doc. 29) is **GRANTED in part and DENIED in part**;

2.     Defendants Arguelles and AOC's Motion to Certify Question to the Montana Supreme Court (Doc. 42) is **DENIED**; and

3.     Defendants Arguelles and AOC's Motion for Partial Summary Judgment Re Duty to Defend (Doc. 44) is **DENIED**.

**IT IS ORDERED**.

DATED this 18th day of March, 2022.

TIMOTHY J. CAVAN
United States Magistrate Judge