John L. Wright
HEDRICK GARDNER KINCHELOE GAROFALO, LLP
4201 Congress Street
Suite 300
Charlotte, NC 28209
Tel. (704) 366-1101
Fax (704) 366-6181
jwright@hedrickgardner.com

Mark D. Malloy
MEISSNER TIERNEY FISHER & NICHOLS S.C.
111 E. Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202
Tel. (414) 273-1300
Fax (414) 273-5840
mdm@mtfn.com
*Attorneys for Plaintiff UMIA Insurance, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| UMIA INSURANCE, INC., | ) | Cause No.: CV-20-177-SPW-TJC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **PLAINTIFF UMIA INSURANCE, INC.'S,** |
| ENRICO F. ARGUELLES, | ) | **L.R. 56.1(a) STATEMENT OF** |
| ARTHRITIS & OSTEOPOROSIS CENTER | ) | **UNDISPUTED FACTS IN SUPPORT OF** |
| PC, DONNA FRYER, | ) | **ITS MOTION FOR SUMMARY** |
| BROOKLYN T. BLACK, | ) | **JUDGMENT** |
| BARBARA DAVISON, | ) | |
| LORA SMITH, JULIE LORITZ | ) | |
| and STEVE LORITZ, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff UMIA Insurance, Inc. ("UMIA"), by and through their counsel, respectfully submit the following L.R. 56.1(a) Statement of Undisputed Facts in Support of its Motion for Summary Judgment.

**UNDISPUTED FACT NO. 1:** On April 13, 2015, the United States Department of Justice ("DOJ") issued a subpoena to Dr. Enrico Arguelles ("Arguelles") and his clinic, Arthritis and Osteoporosis Center ("AOC") ("the April 13, 2015 Subpoena"). (Ex. 1, 2015 Subpoena).

**UNDISPUTED FACT NO. 2:** The April 13, 2015 subpoena requested the patient health care records of thirty patients who treated at AOC between January 1, 2010 and December 31, 2013. (*Id.*, p. 3).

**UNDISPUTED FACT NO. 3:** The April 13, 2015 subpoena stated that these requested records were "necessary in the performance of the responsibility of the Department of Justice to investigate: Federal health care offenses as defined in 18 U.S.C. § 24(a); violations or conspiracies to violate 18 U.S.C. § 669, 1035, 1347, or 1518; or 18 U.S.C. §§ 287, 371, 664, 1001, 1027, 1341, 1342, or 1954 if the violation relates to a healthcare benefit program (defined in 18 U.S.C. § 24(b))." (*Id.*, p. 1).

**UNDISPUTED FACT NO. 4:** Dr. Arguelles tendered the subpoena to UMIA, who reimbursed him for the costs of responding to this subpoena. (Ex. 2, Depo. of Enrico Arguelles, 91: 2-7).

**UNDISPUTED FACT NO. 5:** On May 5, 2017, claimant Donna Fryer ("Fryer") filed an Application for Review of Claim with the Montana Medical Legal Panel ("MMLP"). (Ex. 3, Fryer MMLP Application).

**UNDISPUTED FACT NO. 6:** Arguelles tendered defense of the Fryer MMLP claim to UMIA, and UMIA retained Attorney Gary Kalkstein ("Kalkstein") to defend Arguelles in the Fryer claim. (Ex. 2, Depo. of Enrico Arguelles, 112: 3-24; Ex. 4, Depo. of Gary Kalkstein, 42: 5-14).

**UNDISPUTED FACT NO. 7:** On January 31, 2018, claimant Barbara Davison ("Davison") filed an Application for Review of Claim with the Montana Medical Legal Panel ("MMLP"). (Ex. 5, Davison MMLP Application).

**UNDISPUTED FACT NO. 8:** Arguelles tendered the defense of the Davison MMLP claim to UMIA, and UMIA retained Kalkstein to defend Arguelles in the Davison claim. (Ex. 2, Depo. of Enrico Arguelles, 112: 3-24; Ex. 4, Depo. of Gary Kalkstein, 42: 5-14).

**UNDISPUTED FACT NO. 9:** On March 8, 2019, claimant Lora Smith ("Smith") filed an Application for Review of Claim with the MMLP. (Ex. 6, Smith MMLP Application).

**UNDISPUTED FACT NO. 10:** Arguelles tendered the defense of the Smith MMLP claim to UMIA, and UMIA retained Kalkstein to defend Arguelles in the Smith claim. (Ex. 2, Depo. of Enrico Arguelles, 112: 3-24; Ex. 4, Depo. of Gary Kalkstein, 42: 5-14).

**<u>UNDISPUTED FACT NO. 11:</u>** Arguelles tendered the defense of the claims filed by claimants Julie Lortz and Brooklyn Black to UMIA and UMIA retained Kalkstein to defend Arguelles in the Lortz and Black claims. (*Id.*).

**<u>UNDISPUTED FACT NO. 12:</u>** Kalkstein defended Arguelles in the Fryer, Davison, Smith, Lortz, and Black claims, pursuant to reservation of rights, from the date of tender of the MMLP claims to the date that the cases settled in 2021.  (Ex. 2, Depo. of Enrico Arguelles, 119: 8-19; Ex. 7, Reservation of Rights Letters).

**<u>UNDISPUTED FACT NO. 13:</u>** Kalkstein's attorney fees incurred in the defense of the Fryer and Davison claims were paid by UMIA. (Ex. 2, Depo. of Enrico Arguelles, 119: 8-19).

**<u>UNDISPUTED FACT NO. 14:</u>** From January 1, 2017 to January 1, 2018, Arguelles and AOC were each insured by UMIA under a professional liability policy, policy numbers MT30713 (Arguelles) and MT 200018 (AOC) ("the 2017 Policies").  (Ex. 8, 2017 Arguelles Policy; Ex. 9, 2017 AOC Policy).

**<u>UNDISPUTED FACT NO 15:</u>**  The 2017 Arguelles Policy contains the following insuring agreement:

A claim must meet two requirements to be covered under this section:

(1)    The claim must result from medical service which was provided or which should have been provided on or after the retroactive date stated on your Declarations Sheet: and

(2)    The claim must be made for the first time during the policy period. A claim or potential claim reported to a previous insurer is not covered under this section.

\*\*\*

We will pay on your behalf damages you are legally obligated to pay resulting from:

(1)    The medical services which you personally provided or should have provided to your patients.

(2)    The medical services provided, or which should have been provided, by others for whom you are legally responsible, except for:

(a)    Physician assistants, certified registered nurse anesthetists, certified registered nurse midwives, certified registered nurse practitioners and per fusionists unless they are named in an endorsement and the required premium for them is paid; and

(b)    A physician you employee unless her or she is covered for the claim by another professional liability policy;

(3)    Your professional service on a formal medical accreditation board or any committee responsible for making decisions regarding credentials, privileges or quality assurance matters.

(Ex. 8, 2017 Arguelles Policy, p. 13).

**UNDISPUTED FACT NO. 16:**    The 2017 AOC Policy contains the following insuring agreement:

(1)    The claim must result from medical service which was provided or which should have been provided by your employees while acting in the course and scope of their employment on or after the retroactive date stated on your Declarations Sheet; and

(2)    The claim must be made for the first time during the policy period. A claim or potential claim reported to a previous insurer is not covered under this section.

\*\*\*

We will pay on your behalf damages you are legally obligated to pay resulting from medical services provided, or which should have been provided, by your employees while they are acting in the course and scope of their employment.

You and your employees share your limits of coverage.

(Ex. 9, 2017 AOC Policy, pp. 7-8).

**UNDISPUTED FACT NO. 17:** The 2017 Policies contained the following exclusions:

> **Exclusion for violation of law.** We will not cover any claims resulting from your acts which are in violation of any law, statute, ordinance or regulation.
>
> ***
>
> **Exclusion for punitive or exemplary damages.** We will not pay any punitive or exemplary damages. We will defend you, however, against any claim for such damages as long as they result from a claim for damages otherwise covered by this section.
>
> (Ex. 8, 2017 Arguelles Policy, pp. 14-15; Ex. 9, 2017 AOC Policy, pp. 9-10).

**UNDISPUTED FACT NO. 18:** Because it was first reported to UMIA during the 2017 policy period, the 2017 Policies are the UMIA Policies triggered by the Fryer claim.   (Ex. 2, Depo. of Enrico Arguelles, 110: 1-15; Ex. 8, 2017 Arguelles Policy, p. 13 Ex. 9, AOC Policy, pp. 7-8).

**UNDISPUTED FACT NO. 19:** From January 1, 2018 to January 1, 2019, Arguelles and AOC were each insured by UMIA under a professional liability policy, policy numbers MT30713 (Arguelles) and MT 200018 (AOC) ("the 2018 Policies"). (Ex. 10, 2018 Arguelles Policy; Ex. 11, 2018 AOC Policy).

**UNDISPUTED FACT NO. 20:** The 2018 Policies contain the following insuring agreement:

> A. We will pay **damages** an **insured** is legally required to pay as a result of a **medical incident** that happens on or after the applicable **prior acts date** and before the expiration date of this insurance. To fall within this insuring agreement the claim must be first made against the **insured** and reported to us during the **policy period** or any applicable **extended reporting period**.

(Ex. 10, 2018 Arguelles Policy, p. 2; Ex. 11, 2018 AOC Policy, p. 9).

**UNDISPUTED FACT NO. 21:** The 2018 Policies contain the following definition of "damages":

> B.   ***Damages*** means amounts that an ***insured*** is legally obligated to pay to compensate another for injury or damage resulting from a ***medical incident.***

(Ex. 10, 2018 Arguelles Policy, p. 3; Ex. 11, 2018 AOC Policy, p. 10).

**UNDISPUTED FACT NO. 22:** The 2018 Policies contain the following exclusions:

> C.   CRIMINAL OR KNOWINGLY WRONGFUL ACTS
>
> This insurance does not apply to any ***claim*** arising out of a criminal, willful, malicious, fraudulent, dishonest or knowingly wrongful act committed by or with the knowledge of the ***insured***.
>
> ***
>
> H.   VIOLATION OF LAW
>
> This insurance does not apply to any ***claim*** arising out of the violation of any local, state or federal statute, rule or regulation.

(Ex. 10, 2018 Arguelles Policy, pp. 2-3; Ex. 11, 2018 AOC Policy, pp. 9-10).

**UNDISPUTED FACT NO. 23:** The 2018 Policies contained an Extended Reporting Period Endorsement (effective February 1, 2018 for Arguelles and July 13, 2018 for AOC), which indefinitely extended the period during which Arguelles and AOC could report claims and still receive coverage under the 2018 Policies, up to the limits of those policies, as long as the conduct at issue occurred prior to the

Retroactive Dates of September 1, 1990 (Arguelles) and September 1, 2008 (AOC). (Ex. 10, 2018 Arguelles Policy, p. 43; Ex. 11, 2018 AOC Policy, p. 1).

**UNDISPUTED FACT NO. 24:** Because they were first reported to UMIA during the 2018 policy period (or after the effective date of the Extended Reporting Period Endorsement), the 2018 Policies are the UMIA Policies triggered by the Davison, Smith, Lortz, and Black claims. (Ex. 10, 2018 Arguelles Policy, pp. 2, 43; Ex. 11 2018 AOC Policy, p. 1, 9).

**UNDISPUTED FACT NO. 25:**  On May 3, 2017, Kalkstein sent an e-mail to UMIA representative Kim Day enclosing newspaper articles which described a raid on AOC executed by the FBI, the Federal Department of Health and Human Services and officials from the Montana Medicaid Fraud Control Unit.  (Ex. 12, May 3, 2017 Kim Day Email; Ex. 4, Depo. of Gary Kalkstein, 41:16 – 42:4; Ex. 13, Depo. of Kim Day, 112:17 – 113:3).

**UNDISPUTED FACT NO. 26:** The articles provided by Kalkstein to Day on May 3, 2017 indicated the raid was conducted pursuant to a search warrant. (Ex. 14, April 3, 2017 Gazette Article, p. 2).

**UNDISPUTED FACT NO. 27:** The articles provided by Kalkstein to Day indicated numerous former patients of AOC began calling federal investigators with questions and concerns about the treatment they had received, leading to the FBI

establishing a hotline for former patients to report any such questions or concerns. (Ex. 15, April 19, 2017 Gazette Article).

**UNDISPUTED FACT NO. 28:** Fryer treated with Arguelles between February 2009 and December 2015. (Ex. 16, Fryer Complaint, ⁋ 28).

**UNDISPUTED FACT NO. 29:** Ms. Fryer's May 3, 2017 MMLP application contained the following allegations:

(1) Dr. Arguelles diagnosed her with rheumatoid arthritis in February 2009

(2) In or about March of 2015, she obtained a second opinion and learned that she did not have rheumatoid arthritis.

(Ex. 3, Fryer MMLP Application p. 3).

**UNDISPUTED FACT NO. 30:** Ms. Fryer's MMLP application contained the following allegations:

(1) Arguelles "knew or should have known" that Fryer's rheumatoid arthritis diagnosis was wrongful.

(2) Arguelles' diagnosis was "without any medical basis."

(3) Arguelles' diagnosis "may have been knowingly false and fraudulent." (*Id.*).

**UNDISPUTED FACT NO. 31:** Fryer listed Karl Krieger – a Health Care Fraud Investigator in the DOJ – as a potential witness for her MMLP claim. (*Id.*, p. 4).

**UNDISPUTED FACT NO. 32:** Fryer was interviewed by federal authorities in connection with Dr. Arguelles' treatment of her. (Ex. 17, Depo. of Donna Fryer, 137: 5-14).

**UNDISPUTED FACT NO. 33:** Davison treated with Dr. Arguelles between June 2013 and December 2015. (Ex. 18, Davison Complaint, ₽ 36).

**UNDISPUTED FACT NO. 34:** Davison's January 31, 2018 MMLP Application listed DOJ investigator Karl Krieger as a potential witness and contained the following allegations:

(1) Arguelles diagnosed her with rheumatoid arthritis when she did not actually have that condition;

(2) She began to question her diagnosis because of the media reporting of the FBI raid on AOC.

(Ex. 5, Davison MMLP Application, pp. 4-5).

**UNDISPUTED FACT NO. 35:** Davison was interviewed by federal authorities in connection with her treatment by Dr. Arguelles. (Ex. 19, Depo. of Barbara Davison, 31: 1-4).

**UNDISPUTED FACT NO. 36:** On June 27, 2017, Kalkstein forwarded an email to Day from Arguelles' criminal counsel. The e-mail referenced discussions with rheumatologist, Dr. Jon Moses and radiologist Dr. Michael Staloch. (Ex. 20,

June 27, 2017 Email; Ex. 4, Depo. of Gary Kalkstein 238: 16-19). ("the June 27, 2017 Email").

**UNDISPUTED FACT NO. 37:** The June 27, 2017 Email stated:

Staloch (who is an MSK fellowship trained rad) has significant concerns. I believe his words to Jon [Moses] were "this appears fraudulent."

(Ex. 20, June 27, 2017 Email, p. 2).

**UNDISPUTED FACT NO. 38:** On August 18, 2017 Kalkstein sent a letter to Day which detailed a meeting he and Arguelles' personal counsel, Kirkpatrick, had with Arguelles' criminal lawyers in Seattle. ("the August 18, 2017 letter") (Ex. 21, August 18, 2017 Report).

**UNDISPUTED FACT 39:** The August 18, 2017 letter included the following statements:

(1) Arguelles' criminal counsel had advised him to invoke the Fifth Amendment at any MMLP hearing or civil suit.

(2) One potential sanction if Dr. Arguelles did, indeed, plead the Fifth in a civil suit was a default judgment being entered against him.

(*Id.*, p. 2).

**UNDISPUTED FACT NO. 40:** Over the course of his defense of Arguelles, Kalkstein had several discussions with Arguelles and his personal counsel Stewart Kirkpatrick regarding whether Arguelles was going to plead the Fifth Amendment. (Ex. 4, Depo. of Gary Kalkstein, 259:15 – 260:13).

**<u>UNDISPUTED FACT NO. 41:</u>** During her MMLP hearing on January 11, 2018, Fryer's counsel Mike Eiselein ("Eiselein") questioned Arguelles as to whether, during treatment, he had a pattern and practice of intentionally pressing hard on his patients' joints to elicit a pain response, and Kalkstein informed Day about this line of questioning in a letter. (Ex. 4, Depo. of Gary Kalkstein, 233:14 – 235:3; Ex. 22, November 30, 2018 Letter, p. 4).

**<u>UNDISPUTED FACT NO. 42:</u>** On October 3, 2018, Fryer filed a lawsuit against Arguelles and AOC alleging that Dr. Arguelles incorrectly diagnosed her with rheumatoid arthritis and prescribed her a drug called Remicade, which caused her damage, and that AOC was vicariously liable for such conduct. (Ex. 16, Fryer Initial Complaint) ("the Fryer Complaint").

**<u>UNDISPUTED FACT NO. 43:</u>** The Fryer Complaint contained the following allegations:

(1) Since 2009, Arguelles had referred "most" of his patients to AOC's MRI machine.

(2) "All or the vast majority" of AOC's MRI images were sent New York radiologist Ross Horsely to provide for interpretation.

(*Id.*, ¶¶ 16-17).

**<u>UNDISPUTED FACT NO. 44:</u>** The Fryer Complaint contained the following allegations:

(1) Dr. Arguelles "negligently or intentionally or knowingly or purposefully" misdiagnosed numerous patients with rheumatoid arthritis but who did not have that condition.

(2) Dr. Arguelles had a "pattern and practice" of failing to inform his patients of any uncertainties of a "sero-negative Rheumatoid Arthritis" diagnosis.

(3) Dr. Arguelles had a "pattern and practice" of pressing on patients' joints during physical examinations until they hurt as a means of supporting diagnoses of rheumatoid arthritis;

(4) Dr. Arguelles had a "pattern and practice" of referring his patients to AOC's infusion center without informing them they had the right to have their infusions done at an infusion center of their choice;

(5) Dr. Arguelles had a "pattern and practice" of referring his patients to the AOC MRI scanner without informing them they had a right to have this imaging conducted at a practice of their choice; and

(6) Dr. Arguelles' conduct was "actually malicious or actually fraudulent" such that she was entitled to punitive damages

(*Id.*, ¶¶ 18, 20-23, 44).

**UNDISPUTED FACT NO. 45:** In November 2018, Kalkstein requested that Eiselein provide him with medical lien information in the Fryer and Davison claims so that he could value the claims for potential settlement. (Ex. 4, Depo. of Gary Kalkstein, 301:5 – 302:20).

**UNDISPUTED FACT NO. 46:** On November 29, 2018, Eiselein sent Kalkstein an email which stated:

> We cannot agree to the carrier's request for our calculation of the amounts of any medical bills, lost wages and other special damages. We will not be claiming any past medical bills or lost wages. We intend to focus on Dr. Arguelles' behavior and his practice of overdiagnosing [sic] patients – apparently for profit. Therefore, since they won't be

claimed, these "specials" are irrelevant to any issue in the case and not relevant to our evaluation of the merits or value of these claims.

(Ex. 23, November 29, 2018 Email; Ex. 4, Depo. of Gary Kalkstein, 302:21 – 304:12; Ex. 24, Depo. of Michael Eiselein, 60:10 – 62:9).

**UNDISPUTED FACT NO. 47:** On December 24, 2018, Davison filed a Complaint against Arguelles and AOC. (Ex. 18, Davison Initial Complaint). ("the Davison Complaint")

**UNDISPUTED FACT NO. 48:** This Davison Complaint contained the following allegations:

(1) Since 2009, Arguelles had referred "most" of his patients to AOC's MRI machine.

(2) "All or the vast majority" of AOC's MRI images were sent New York radiologist Ross Horsely to provide for interpretation.

   (*Id.*, ¶¶ 21-22).

**UNDISPUTED FACT NO. 49:** This Davison Complaint contained the following allegations:

(1) Dr. Arguelles "negligently or intentionally or knowingly or purposefully" misdiagnosed numerous patients with rheumatoid arthritis but who did not have that condition.

(2) Dr. Arguelles had a "pattern and practice" of failing to inform his patients of any uncertainties of a "sero-negative Rheumatoid Arthritis" diagnosis.

(3) Dr. Arguelles had a "pattern and practice" of pressing on patients' joints during physical examinations until they hurt as a means of supporting diagnoses of rheumatoid arthritis;

14

(4) Dr. Arguelles had a "pattern and practice" of referring his patients to AOC's infusion center without informing them they had the right to have their infusions done at an infusion center of their choice;

(5) Dr. Arguelles had a "pattern and practice" of referring his patients to the AOC MRI scanner without informing them they had a right to have this imaging conducted at a practice of their choice; and

(6) Dr. Arguelles' conduct was "actually malicious or actually fraudulent" such that she was entitled to punitive damages

(*Id.*, ¶¶ 23, 25, 27-29, 51).

**UNDISPUTED FACT NO. 50:** Day drafted a "Reserve Report" for that claim on December 3, 2018 for the Davison claim. (Ex. 25, Davison December 3, 2018 Reserve Report). ("the December 3, 2018 Reserve Report").

**UNDISPUTED FACT NO. 51:** The purpose of the December 3, 2018 reserve report was to provide Day's managers with a summary of the claim to-date and recommendations of where to set the initial reserves. (Ex. 13, Depo. of Kim Day, 29:24 – 30:8).

**UNDISPUTED FACT NO. 52:** The December 3, 2018 reserve report included the following statements:

(1)    The DOJ was investigating Dr. Arguelles for Medicare fraud. (Ex. 25, Davison December 3, 2018 Reserve Report, p. 2).

(2)    Eiselein would argue that Dr. Arguelles ran a for-profit clinic without regard to patient welfare. (*Id.,* pp. 2-3).

(3)    Based on projected values of $500,000-$600,000 in past medical specials, $200,000 in future medical specials, and the $250,000 statutory cap on non-economic damages, a projected verdict would be somewhere between $950,000-$1,050,000. (*Id.*, p. 5).

**UNDISPUTED FACT NO. 53:** The December 3, 2018 Reserve Report recommended setting reserves for the Davison Claim be set at $950,000 for Dr. Arguelles and $5,000 for AOC. (*Id.*).

**UNDISPUTED FACT NO. 54:** The December 3, 2018 reserve report contained the following statement:

"[W]e do not have any evidence of the medical specials."

(*Id.*).

**UNDISPUTED FACT NO. 55:** The recommendations and valuations stated in the December 3, 2018 Reserve Report were based on all claims asserted in the Davison claim. (Ex. 13, Depo. of Kim Day, 119:21 – 121:6).

**UNDISPUTED FACT NO. 56:** Following preparation of the December 3, 2018 Reserve Report, Day's supervisor, Trey Kunz, directed Day to obtain medical specials to support her valuation. (Ex. 13, Depo. of Kim Day, 319: 1-4).

**UNDISPUTED FACT NO. 57:** On January 27, 2019, Eiselein advised Kalkstein that he was attempting to obtain the medical expense information that

UMIA had requested, and stated he would "provide that as soon as I get it." (Ex. 26, January 27, 2019 Email; Ex. 24, Depo. of Michael Eiselein, 90:18 – 91:25).

**UNDISPUTED FACT NO. 58:** In March 2019, Eiselein served both the Fryer Complaint and the Davison Complaint on Dr. Arguelles/AOC. (Ex. 27, March 15, 2019 Fryer Claim Note; Ex. 28, March 19, 2019 Davison Claim Note).

**UNDISPUTED FACT NO. 59:** On March 19, 2019, Eiselein informed UMIA that neither Dr. Arguelles nor AOC were required to put in an Answer in either case as he was putting together settlement packages for these cases. (*Id.*).

**UNDISPUTED FACT NO. 60:** Smith's March 8, 2019 MMLP Application alleged that her misdiagnosis by Arguelles and AOC was "part of a pattern of similar clinical errors." (Ex. 6, Smith MMLP Application, p. 6).

**UNDISPUTED FACT NO. 61:** On November 6, 2019, Eiselein sent Kalkstein and Kirkpatrick (personal counsel for Dr. Arguelles) a settlement demand in the Davison claim in the amount of $865,069.59. ("the November 6, 2019 Demand"); (Ex. 29, November 6, 2019 Davison Demand, p. 6).

**UNDISPUTED FACT NO. 62:** The November 6, 2019 Demand itemized the following claimed damages of Davison:

(1)    $262,200.00 for alleged unnecessary Remicade treatments;

(2)    $136,807.91 for medical bills from a stay in the ICU Ms. Davison contended was related to Dr. Arguelles' treatment of her;

(3)    $11,541.68 for rehabilitation after her ICU stay;

(4)    $201,520.00 for eleven years of purported lost wages as a school bus
aide; and

(5)    $250,000 for non-economic damages.

(*Id.*, p. 6).

**UNDISPUTED FACT NO. 63:** As to Remicade charges, the November 6,
2019 Demand "assume[d]" an average charge of $15,600 for each Remicade
infusions, based on the average cost of the same treatment for Fryer but provided no
Remicade bills. (Ex. 29 November 6, 2019 Demand, p. 6).

**UNDISPUTED FACT NO. 64:** The November 6, 2019 Demand did not
include documentation of medical liens. (*Id.* pp. 9-30).

**UNDISPUTED FACT NO. 65:** The November 6, 2019 Demand did not
include expert reports.  (*Id.*; Ex. 24, Depo. of Michael Eiselein, 93: 3-11, 104:21 –
105:19).

**UNDISPUTED FACT NO. 66:** In her lawsuit against Arguelles, Davison
contended that an ICU stay and subsequent rehabilitation occurred some six months
after she stopped treating with Arguelles was caused by Arguelles' treatment. (Ex.
29, November 6, 2019 Demand, pp. 3-4; Ex. 19, Depo. of Barbara Davison, 25: 7-
13, 60:25 – 61:10).

**UNDISPUTED FACT NO. 67:** In the November 6, 2019 Demand,
Davison's lost wage claim was supported by a W-2 that indicated Ms. Davison

earned $16,873.61 in wages in 2014. (Ex. 29, November 6, 2019 Demand, p. 8; Ex. 24, Depo. of Michael Eiselein, 93: 3-11).

**UNDISPUTED FACT NO. 68:** The November 6, 2019 Demand included the following statements:

(1) Arguelles was in the top 3 of prescribers of Remicade in the country.

(2) 36% of Arguelles' patients were prescribed Remicade, which was above the national average of 15%.

(3) The rate of Remicade use by Arguelles was "alarming higher than the national average."

(4) Based on the "alarmingly higher" rate of Remicade prescription, "[t]he raid of the AOC offices by the U.S. Department of Justice in March of 2017 is not surprising." (*Id.*, p. 5).

(Ex. 29, November 6, 2019 Demand., pp. 4-5).

**UNDISPUTED FACT NO. 69:** On December 15, 2019, Eiselein sent Kalkstein and Kirkpatrick (personal counsel for Dr. Arguelles) a settlement demand in the Fryer claim in the amount of $856,041 ("the December 15, 2019 Demand") (Ex. 30, December 15, 2019 Fryer Demand).

**UNDISPUTED FACT NO. 70:** The December 15, 2019 Demand itemized the following claimed damages of Fryer:

(1) $562,041 for the cost of unnecessary Remicade treatment.

(2) $37,700 for "out of pocket expenses."

(3) $6,300 in travel expenses.

(4)  $250,000 in non-economic damages.

(*Id.*, p. 5).

**UNDISPUTED FACT NO. 71:** The December 15, 2019 Demand did not include any medical bills or medical liens. (Ex. 30, December 15, 2019 Demand.).

**UNDISPUTED FACT NO. 72:** The December 15, 2019 claimed that Fryer had been billed $562,041 by Arguelles, including $498,138 for Remicade treatments. (*Id.*, p. 4).

**UNDISPUTED FACT NO. 73:** The December 15, 2019 Demand claimed that Ms. Fryer had been paying Arguelles "nearly the entire amount" of her $580 Social Security Disability check and that her travel expenses totaled $6,300. No documentation was provided to support either claim. (*Id*, p. 2.).

**UNDISPUTED FACT NO. 74:** The December 15, 2019 Demand included the following statements:

(1)  It was questionable whether Dr. Arguelles' diagnosis of rheumatoid arthritis was "the result of merely negligent or irrational over-diagnosis or whether there is fraudulent intent motivated by the possibility of significant monetary gain." (*Id.*, p. 4)

(2)  Arguelles was the number 3 prescriber of Remicade in the country. (*Id.*, p. 3).

(3)  36% of Arguelles' patients were prescribed Remicade, which was above the national average of 15%. (*Id.*).

(4)  The rate of Remicade use by Arguelles was "alarmingly high[]." (*Id.*).

(5) Based on the "alarmingly higher" rate of Remicade prescription, "[t]he raid of the AOC offices by the U.S. Department of Justice in March of 2017 is not surprising." (*Id.*).

**UNDISPUTED FACT NO. 75:** The December 15, 2019 Demand indicated that Fryer would pursue theories of recovery of "fraudulent prescribing" and punitive damages. (*Id.*, p. 5).

**UNDISPUTED FACT NO. 76:** The December 15, 2019 Demand did not include any expert reports (*Id.*; Ex. 24, Depo. of Michael Eiselein, 93: 3-11).

**UNDISPUTED FACT NO. 77:** Ms. Fryer claims that a heart procedure performed years after she stopped treating with Dr. Arguelles was caused by Dr. Arguelles' treatment. (Ex. 17, Depo. of Donna Fryer, 26:23 – 27:3).

**UNDISPUTED FACT NO. 78:** Eiselein believed that Arguelles' invocation of his 5th Amendment privilege may void coverage under the UMIA Policy. (Ex. 24, Depo. of Michael Eiselein, 82:17 – 85:5; 192:7 – 193:6).

**UNDISPUTED FACT NO. 79:** The actual cost of Fryer's Remicade treatments with Arguelles is $197,283, broken down as follows:

(1) $13,138 on December 15, 2011.

(2) $13,138 on February 8, 2012.

(3) $16,996 on November 14, 2012.

(4) $32,925 on January 9, 2013.

(5) $17,824 on February 27, 2013.

(6) $17,735 on March 27, 2013.

(7) $34,302 on May 8, 2013.

(8) $16,852 on August 14, 2013.

(9) $34,156 on October 30, 2013.

(10) $217 on October 21, 2015.

(Ex. 31, Fryer Remicade Bills).

**UNDISPUTED FACT NO. 80:** On January 8, 2020, Day drafted updated Reserve Reports for the Fryer, Davison, and Smith claims. (Ex. 32, January 8, 2020 Fryer Reserve Report; Ex. 33, January 8, 2020 Davison Reserve Report; Ex. 34, January 8, 2020 Smith Reserve Report) (collectively "the January 8, 2020 Reserve Reports").

**UNDISPUTED FACT NO. 81:** The January 8, 2020 Reserve Reports requested the Fryer reserve be set at $700,000, the Davison reserve be set at $750,000, and the Smith reserve be set at $560,000. (Ex. 32, January 8, 2020 Fryer Reserve Report, p. 11; Ex. 33, January 8, 2020 Davison Reserve Report, p. 11; Ex. 34, January 8, 2020 Smith Reserve Report, p. 9).

**UNDISPUTED FACT NO. 82:** The January 8, 2020 Reserve Reports identified "probable verdict ranges" of $850,000 to $1,000,000 (Fryer); $850,548 to $900,548 (Davison); and $520,000-$600,000 (Smith).  (Ex. 32, January 8, 2020

Fryer Reserve Report, p. 10; Ex. 33, January 8, 2020 Davison Reserve Report, p. 10;
Ex. 34, January 8, 2020 Smith Reserve Report, p. 9).

**UNDISPUTED FACT NO. 83:**  The January 8, 2020 Fryer and Davison
Reserve Reports stated that the "probable verdict ranges" on which reserves were
requested were "[d]epend[[ent] on proven economic damages" because "[n]o formal
discovery has taken place" (Ex. 32, January 8, 2020 Fryer Reserve Report, p. 8, 11;
Ex. 33, January 8, 2020 Davison Reserve Report, p. 8, 10).

**UNDISPUTED FACT NO. 84:** The January 8, 2020 Smith Reserve Report
contains the following statement:

> "[W]e continue to wait for Ms. Smith's attorney to provide additional
> damage information. Until he does so, I do not feel like I can make a
> meaningful settlement authority request." (Ex. 34, January 8, 2020 Smith
> Reserve Report, p. 10).

**UNDISPUTED FACT NO. 85:** The values stated in the January 8, 2020
Reserve Reports did not differentiate between medical negligence claims, punitive
damage claims, and claims arising out of fraud. (Ex. 13, Depo. of Kim Day, 119:21
– 121:6).

**UNDISPUTED FACT NO. 86:** UMIA defines "reserve" as the maximum
possible exposure on a file. (Ex. 35, Depo. of Julia Houser, 45:4 – 47:9).

**UNDISPUTED FACT NO. 87:** The January 8, 2020 Reserve Reports state that Arguelles was being investigated by the federal government for the following claims: (1) Conspiracy to Defraud the Government with Respect to Claims; (2) False, Fictitious, or Fraudulent Claims; (3) False Statements Related to Health Care Matters; (4) Wire Fraud; and (5) Health Care Fraud. (Ex. 32, January 8, 2020 Fryer Reserve Report, pp. 2-3; Ex. 33, January 8, 2020 Davison Reserve Report, pp. 2-3; Ex. 34, January 8, 2020 Smith Reserve Report, pp. 2-3).

**UNDISPUTED FACT NO. 88:** The January 8, 2020 Reserve Reports state that UMIA believed the federal government was investigating Arguelles for violations of the physician referral prohibitions, known as the Stark Laws. (Ex. 32, January 8, 2020 Fryer Reserve Report, pp. 2-3; Ex. 33, January 8, 2020 Davison Reserve Report, pp. 2-3; Ex. 34, January 8, 2020 Smith Reserve Report, pp. 2-3).

**UNDISPUTED FACT NO. 89:** The January 2020 Reserve Reports include the following language:

(1)     Dr. [John] McCahan states that after reviewing Dr. Argulles' [sic] care in this case and the others, he was frankly taken back by what he feels was the magnitude and scale of Dr. Arguelles' egregious malpractice and inappropriate, costly and dangerous treatment and the damaging consequences to each of these patients.

(2)     We asked [board -certified radiologist, Dr. Suzanne Shaw] to do a blind review and we initially provided no information regarding the diagnosis made from the images. Dr. Shaw commented they were of poor quality and besides minor degenerative changes (different than the erosive changes

24

caused by RA), she saw nothing of interest. When told that the patient had been diagnosed with RA based on the images, she asked if this was a scam. Dr. Shaw adamantly disagrees with the interpretation that the patient had the erosive changes which are the hallmark of RA.

(Ex. 32, January 8, 2020 Fryer Reserve Report, p. 8; Ex. 33, January 8, 2020 Davison Reserve Report, pp. 7-8; Ex. 34, January 8, 2020 Smith Reserve Report, pp. 6-7).

**UNDISPUTED FACT NO. 90:** The January 2020 Fryer Reserve Report lists the following allegation being made:

> Dr. Arguelles had a pattern and practice during physical examination of pressing the joints until they hurt in order to increase the number of "tender joints" as a means of supporting a diagnosis of rheumatoid arthritis in potential patients who are "serum negative."

(Ex. 32, January 8, 2020 Fryer Reserve Report, p. 5).

**UNDISPUTED FACT NO. 91:** In March 2020, Constellations' (UMIA's then-parent company) Large Loss Committee ("LLC") convened to discuss all of the claims against Arguelles. (Ex. 36, Depo. of Shelly Davis, 132: 7-23).

**UNDISPUTED FACT NO. 92:** The LLC was a committee that met to discuss cases where policy limits authority had been requested or where there was a "systemic" claim (i.e. more than one claim resulting from the same conduct). (Ex. 13, Depo. of Kim Day, 102:24 – 103:4; 311:24 – 312:3).

**UNDISPUTED FACT NO. 93:** The LLC requested that Day obtain medical bills and liens to support the damages claims before they would consider the

requested settlement authority. (*Id.*, 180:20 – 181:10; Ex. 35, Depo. of Julia Houser, 171:17 – 173:5).

**UNDISPUTED FACT NO. 94:** Day updated her Reserve Reports on June 23, 2020. (Ex. 37, June 23, 2020 Fryer Reserve Report; Ex. 38, June 23, 2020 Davison Reserve Report; Ex. 39, June 23, 2020 Smith Reserve Report). ("the June 2020 Reserve Reports")

**UNDISPUTED FACT NO. 95:** At her deposition, Day testified as follows:

I'm just looking to see if it changed between reports. Because at the time that I authored the January [2020] report, I believe I didn't have any damage information from Mr. Eiselein and these numbers that are in the damage column were just numbers, just numbers. I didn't have any evidence of them. And I think my report from June [2020] after asking for that information for literally several years and not getting it that I changed my damage model to question marks. So I didn't know if my reserve changed or not, and it doesn't look like -- my reserve recommendation, and it looks like I didn't.

(Ex. 13, Depo. of Kim Day, 163: 6-19).

**UNDISPUTED FACT NO. 96:** On July 6, 2020, Fryer and Davison each filed an Amended Complaint that added causes of action for "Fraud" and "Constructive Fraud."   (Ex. 40, Fryer Amended Complaint; Ex. 41, Davison Amended Complaint). (collectively "the July 6, 2020 Amended Complaints")

**UNDISPUTED FACT NO. 97:** The July 6, 2020 Amended Complaints contained the following allegations:

(1)    "Upon information and belief, Dr. Arguelles diagnosed scores of patients with so-called 'sero-negative rheumatoid arthritis' when he knew or should have known that many of these patients, including [Ms. Fryer and Ms. Davison], do not have rheumatoid arthritis."

(Ex. 40, Fryer Amended Complaint, ℙ 41; Ex. 41, Davison Amended Complaint ℙ 49).

(2)    "Dr. Arguelles knew or should have known that these diagnoses, including [Ms. Fryer's and Ms. Davison's], were false or at least doubtful. These false or doubtful diagnoses were entered by Dr. Arguelles into the charts of his patients – including [Ms. Fryer's and Ms. Davison's] chart – in order to justify long-term and profitable but dangerous and unnecessary drug treatments to his patients, to their insurers and to Medicare." (Ex. 40, Fryer Amended Complaint, ℙ 43; Ex. 41, Davison Amended Complaint ℙ 51).

(3)    "By making these false or doubtful diagnoses, Dr. Arguelles put his own financial interests ahead of the well-being of Mrs. Fryer and a number of his other patients." (Ex. 40, Fryer Amended Complaint, ℙ 45; Ex. 41, Davison Amended Complaint ℙ 53).

(4)    "[Arguelles'] conduct amounts to either fraud or constructive fraud and warrants a substantial jury verdict and the imposition of punitive damages." (Ex. 40, Fryer Amended Complaint, ℙ 47; Ex. 41 Davison Amended Complaint ℙ 55).

**UNDISPUTED FACT NO. 98:** The July 6, 2020 Amended Complaints sought punitive damages from Arguelles. (Ex. 40, Fryer Amended Complaint, ℙ 55; Ex. 41 Davison Amended Complaint ℙ 61).

**UNDISPUTED FACT NO. 99:** On September 29, 2020, Smith filed a Complaint against Arguelles and AOC. (Ex. 42, Smith Complaint).

**UNDISPUTED FACT NO. 100:** The Smith Complaint included causes of action for (1) Medical Negligence; (2) Fraud; (3) and Constructive Fraud. (*Id.*).

**UNDISPUTED FACT NO. 101:** The Smith Complaint also sought an award of punitive damages in her Complaint. (*Id.*, ℙ 72).

**UNDISPUTED FACT NO. 102:** The Smith Complaint alleged, *inter alia*:

- "As part of a pattern of conduct, [Dr. Arguelles and AOC] knew that patients like [Ms. Smith] who they were treating with Remicade did not have rheumatoid arthritis and knew that the patients did not know they did not have rheumatoid arthritis." (Ex. 42, Smith Complaint, ℙ 57)

- Dr. Arguelles and AOC "acted with actual fraud in the diagnosis and treatment of patients, including [Ms. Smith]." (*Id.*, ℙ 65).

- Dr. Arguelles and AOC "knowingly concealed from patients, including [Ms. Smith] their pattern of diagnosing patients with rheumatoid arthritis who did not have the condition, for their financial betterment." (*Id.*, ℙ 67).

**UNDISPUTED FACT NO. 103:** In the Smith Lawsuit, Smith claimed she required future medical treatment. (Ex. 4, Depo. of Gary Kalkstein, 294:13 – 295:5).

**UNDISPUTED FACT NO. 104:** On July 17, 2020, Eiselein provided UMIA with copies of medical liens filed with regard to Fryer's treatment that she claimed was related to Arguelles' conduct, liens which were dated over a year earlier from February 21, 2019 and May 8, 2019.  (Ex. 43, Fryer Lien Packet). ("the July 2020 Fryer Lien Packet").

**UNDISPUTED FACT NO. 105:** The July 2020 Lien Packet identified Fryer medical liens totaling $49,535.54. (*Id.*).

**UNDISPUTED FACT NO. 106:** On August 20, 2020, Dr. Arguelles provided a signed copy of his "Consent to Settle" form, applicable to both the Fryer and Davison claims. (Ex. 44, Consent to Settle Form).

**UNDISPUTED FACT NO. 107:** At his deposition in this case, Kalkstein testified that, besides one phone call, Dr. Arguelles consistently maintained he met the standard of care in his treatment of the five claimants (Fryer, Davison, Smith, Lortz, and Black). (Ex. 4., Depo. of Gary Kalkstein, 314:14 – 315: 15).

**UNDISPUTED FACT NO. 108:** Arguelles testified as follows in his deposition:

Q.    Yep. And, as you sit here today, you believe that the course of treatment that they were put through was proper, correct?

A.    Yes.

Q.    And you believe that for each of these five patients that you met the standard of care in your treatment of them, correct?

A.    Yes.

Q.    You still believe that today, right?

A.    I still believe it today.

                                        ***

Q.    And if you were called to testify -- let's say these cases went to trial, these five cases. They didn't settle and they went to trial. You would have testified that you met the standard of care in diagnosing rheumatoid arthritis if you were asked, fair?

A.    Yes.

Q.    And you would have testified – strike that. If -- if this case went to -- these cases did not settle and you went to trial, you would have testified that your diagnosis of rheumatoid arthritis in each of these patients was correct, fair?

A.      Yes.

(Ex. 2, Depo. of Enrico Arguelles, 51: 14-23; 60: 7-21).

**UNDISPUTED FACT NO. 109:** At his deposition in this case, Arguelles

brought with him learned treatises, testifying that they support his contention that he

met the standard of care in his treatment of the patients. (Ex. 2, Depo. of Enrico

Arguelles, 12:5 – 14:11).

**UNDISPUTED FACT NO. 110:** Dr. Arguelles testified he never admitted

liability in the patient actions and never gave his attorneys the authority to admit

liability. (*Id.*, 162:12 – 163:4).

**UNDISPUTED FACT NO. 111:** Dr. Arguelles further testified in this case

as follows:

Q.      Okay. You've testified on numerous occasions today that you didn't think you did anything wrong in these cases, right?

A.      Exactly.

Q.      So your contention is that UMIA did not pay enough money to settle a case on which you don't believe you did anything wrong; is that correct?

A.      Correct.

Q.      And the reason why you wanted them -- this case settled was not because you felt like you did something wrong but because you just wanted it to be over, correct?

A.      That sounds reasonable.

(Ex. 2, Depo. of Enrico Arguelles 188:14 – 189:2).

**UNDISPUTED FACT NO. 112:** Dr. Arguelles does not believe that there was a causal link between the patients' claimed damages and his treatment. (Ex. 2, Depo. of Enrico Arguelles, 53: 6-20).

**UNDISPUTED FACT NO. 113:** Kalkstein informed UMIA that he felt the patients' claims were defensible on the issue of causation. (Ex. 4, Depo. of Gary Kalkstein, 284: 6-17, 288:22 – 289:6; 291:12 – 292:23, 294:6 – 295:14; Ex. 36, Depo. of Shelly Davis, 89: 4-14; Ex. 45, August 31, 2020 Letter).

**UNDISPUTED FACT NO. 114:** Kalkstein informed UMIA that the amount the patients could claim for past medical expense was, under Montana law, the amount of their medical liens. (Ex. 4, Depo. of Gary Kalkstein, 301:25 – 302:23; 305:21-306:7; Ex. 46, September 1, 2020 Email, p. 1).

**UNDISPUTED FACT NO. 115:** On October 7, 2020, Eiselein provided UMIA with copies of medical liens filed with regard to Davison's treatment that she claimed was related to Arguelles' conduct.  (Ex. 47, October 7, 2020 Email and Attachments). ("The October 2020 Lien Package")

**UNDISPUTED FACT NO. 116:**  The October 2020 Lien Packet indicated Davison's medical liens totaled $0. (*Id.*).

**UNDISPUTED FACT NO. 117:** On three of the five claims brought against him, Arguelles prevailed on standard of care at the MMLP hearing. (Ex. 4, Depo. of Gary Kalkstein, 313: 11-15).

**UNDISPUTED FACT NO. 118:** On October 30, 2020, Eiselein submitted a memorandum to the mediator of the Fryer and Davison cases, Judge Michael Moses, that "discusses issues common to all five [former patient] cases." ("the October 30, 2020 Mediation Memorandum") (Ex. 48, October 30, 2020 Letter and Attachments, p. 3).

**UNDISPUTED FACT NO. 119:** The October 30, 2020 Mediation Memorandum made the following statements:

(1) "UMIA is not required to pay the uncovered fraud and punitive damages claims." (*Id.*, p. 14).

(2) "Rare is the medical malpractice case that will support a fraud claim and a punitive damage claim. All five of these will." (*Id.*, p. 15).

(3) "Satisfaction of any judgment for fraud or punitive damages would be up to Dr. Arguelles personally" (*Id.*, pp. 13-14).

(4) "Dr. Arguelles is free to limit his personal risk by paying his own money to resolve these uncovered claims." (*Id.*, pp. 13-14).

**UNDISPUTED FACT NO. 120:** In the October 30, 2020 Mediation Memorandum, Eiselein indicated to Judge Moses that the "worst-case scenario" for Fryer and Davison was "[b]ig expert expenses, another year of litigation, and $250,000 judgments." (*Id.*, p. 17).

**UNDISPUTED FACT NO. 121:** Eiselein wanted to resolve the cases at mediation because there was a possibility his clients could have received judgments at trial of only $250,000. (Ex. 24, Depo. of Michael Eiselein, 197: 10-24).

**UNDISPUTED FACT NO. 122:** On November 25, 2020, Eiselein sent Kalkstein (UMIA-appointed counsel for Arguelles), Kirpatrick (personal counsel for Arguelles) and Day an email outlining five "conditions" that he required be met before he would agree to further mediate the Fryer and Davison cases. (Ex. 49, November 25, 2020 Email; Ex. 24, Depo. of Michael Eiselein, 198:2 – 199:10). ("the November 25, 2020 Email")

**UNDISPUTED FACT NO. 123:** The November 25, 2020 Email includes the following statement:

> If UMIA wants to mediate, we will gladly attend and negotiate in good faith on the following conditions:
> ***
> 4.      Dr. Arguelles  comes with the authority and sufficient resources to settle any and all "uncovered" claims.
>
> ***
> If some or all of th[e conditions are] unacceptable to the UMIA home office or Dr. Arguelles, we need to start scheduling the depositions….

 (*Id.*, pp. 1-2).

**UNDISPUTED FACT NO. 124:** On January 11, 2021, Arguelles filed Answers to the Amended Complaints filed by Fryer and Davison. (Ex. 50, Fryer Answer; Ex. 51, Davison Answer).

**UNDISPUTED FACT NO. 125:** On February 23, 2021, Arguelles filed an Answer to the Complaint filed by Smith. (Ex. 52, Smith Answer).

**UNDISPUTED FACT NO. 126:** Arguelles' Answer to the Fryer Complaint, Davison Complaint, and Smith Complaint contained the following statement:

> Regarding the allegations of negligence, malpractice and/or other legal conclusions set forth in Plaintiffs Complaint, as well as Plaintiffs allegations referable to causation and damages, Dr. Arguelles asserts that legal duties, conclusions and issues regarding liability, injury, causation and damages are questions for the court and/or trier of fact. Dr. Arguelles denies the allegations and claims against him as raised by Plaintiff and specifically denies allegations of negligence, malpractice, fraud, constructive fraud, and/or other blameworthy conduct in his care and treatment of [the plaintiff].

(Ex. 50, Fryer Answer, pp. 3-4; Ex. 51, Davison Answer, p. 4; Ex. 52, Smith Answer, p. 4).

**UNDISPUTED FACT NO. 127:** Both the Fryer claim and the Davison claim mediated with Judge Michael Moses in January 2021. (Ex. 13, Depo. of Kim Day, 293:16 – 294:6).

**UNDISPUTED FACT NO. 128:** After the January 2021 mediation in the Fryer claim, Judge Moses issued a mediator's proposal to Fryer and UMIA on January 15, 2021, which recommended that the Fryer Claim settle for $480,000. (Ex. 53, Fryer Mediator's Proposal; Ex. 24, Depo. of Michael Eiselein, 199: 14-19.).

**UNDISPUTED FACT NO. 129:** On April 6, 2021, Fryer agreed to settle all claims asserted against Arguelles for $480,000. (Ex. 54, Fryer Release).

**UNDISPUTED FACT NO. 130:** On April 6, 2021, Fryer released Arguelles from any and all claims asserted against him in the Fryer Lawsuit, and the release

contained a provision stating that the settlement was not to be considered an admission of liability. (Ex. 54, Fryer Release).

**UNDISPUTED FACT NO. 131:**  Of the $480,000 paid to settle the Fryer Lawsuit, UMIA paid $250,000 and Dr. Arguelles paid $230,000. (Ex. 2 Depo. of Enrico Arguelles, 186: 9-16).

**UNDISPUTED FACT NO. 132:**  After the January 2021 mediation in the Davison claim on January 15, 2021, Judge Moses issued a mediator's proposal to Davison and UMIA which he recommended that the Davison Claim settle for $375,000. (Ex. 55, Davison Mediator's Proposal; Ex. 24, Depo. of Michael Eiselein, 199: 20-25).

**UNDISPUTED FACT NO. 133:**  On September 9, 2021, Smith's counsel informed UMIA via email that Smith had lost wages of $25,208 as well as liens of $63,733.67 from BCBS of Montana, $155,233.20 from BCBS of Wyoming, and $65,808.57 from ABCBS, for a total of $284,775.44, as well as a wage loss claim of $25,208.12. (Ex. 56, September 9, 2021 Letter, p. 1).

**UNDISPUTED FACT NO. 134:** Following the Smith mediation in September 2021, UMIA offered the sum of $410,208, broken down as (1) the $285,000 total lien; (2) $25,208 in lost wages; and (3) $100,000 in non-economic damages. (Ex. 57, September 17, 2021 Email).

**UNDISPUTED FACT NO. 135:** UMIA ultimately increased its offer to Smith to $500,000 (Ex. 35, Depo. of Julia Houser, 230: 18-22).

**UNDISPUTED FACT NO. 136:** UMIA representative Julia Houser (who attended the September 2021 Smith mediation) testified at her deposition:

> Q.    And why did UMIA pay 500 to settle the claim of Smith in September of 2021?
>
> A.    Because we had more information. Mr. Moyers had gone ahead and given us the lien information and she had had back surgery that we could attribute to Dr. Arguelles' treatment. So we had more information and so it increased the value -- the settlement value of that case.

(*Id.*, 230:23 – 231:5).

**UNDISPUTED FACT NO. 137:** On February 26, 2021, Davison agreed to settle all claims asserted against Arguelles for $375,000. (Ex. 58, Davison Release).

**UNDISPUTED FACT NO. 138:** On February 26, 2021, Davison released Arguelles from any and all claims asserted against him in the Davison Lawsuit, and the release contained a provision stating that the settlement was not to be considered an admission of liability. (*Id.*).

**UNDISPUTED FACT NO. 139:** Of the $375,000 paid to settle the Davison Lawsuit, UMIA paid $250,000 and Dr. Arguelles paid $125,000. (Ex. 2 Depo. of Enrico Arguelles, 186: 17-20).

**UNDISPUTED FACT NO. 140:** On November 15, 2021, Smith released Arguelles from any and all claims asserted against him in the Smith Lawsuit, in exchange for $725,000, with UMIA paying $500,000 and Dr. Arguelles paying

$225,000, and the release contained a provision stating that the settlement was not to be considered an admission of liability. (Ex. 59, Smith Release; Ex. 2, Depo. of Enrico Arguelles, 186:21 – 187:4).

**UNDISPUTED FACT NO. 141:** UMIA paid a total of over $1.7 million to resolve all of the claims asserted by former patients against Dr. Arguelles and AOC. (Ex. 2, Depo. of Enrico Arguelles, 184: 6-9, 186:9 – 187:4).

**UNDISPUTED FACT NO. 142:** On July 7, 2021, Dr. Arguelles (individually and on behalf of AOC) reached a settlement with the federal government for $1,268,646 in exchange for a release of the following civil claims: (1) violations of the False Claims Act, §§ 3729-3733; (2) the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; (3) the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; and (4) common law theories of payment by mistake, unjust enrichment, and fraud. (Ex. 60, DOJ Settlement Agreement, pp. 2-3; Ex. 2, Depo. of Enrico Arguelles, 197:5 – 198:4).

Dated this 7th day of May, 2024.

By: *Electronically signed by Mark D. Malloy*

John L. Wright
HEDRICK      GARDNER      KINCHELOE
GAROFALO, LLP
4201 Congress Street
Suite 300
Charlotte, NC 28209
Tel. (704) 366-1101
Fax (704) 366-6181
jwright@hedrickgardner.com

Mark D. Malloy
MEISSNER TIERNEY FISHER & NICHOLS
S.C.
111 E. Kilbourn Avenue, 19th Floor
Milwaukee, WI  53202
Tel. (414) 273-1300
Fax (414) 273-5840
mdm@mtfn.com
Attorneys for Plaintiff UMIA Insurance, Inc